**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

In re: Appeal of Bennington School, Inc. }
}
} Docket No. 85-4-00 Vtec
}
}

### Decision and Order on Second Round of Cross-Motions for Summary Judgment

Appellant Bennington School, Inc. appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Bennington, requiring it to apply for conditional use approval, rather than as a permitted use. Appellants are represented by Lon T. McClintock, Esq.; the Town is represented by Robert E. Woolmington, Esq. Although the sale of the specific house initially involved in this appeal is no longer pending, the Court allowed the appeal to continue as it presents questions capable of repetition yet evading review.

Appellant Bennington School, Inc., and the Town have moved again for summary judgment on the question of whether the proposed use of a former single-family house as a residence for the school should be classified as a A group home,@ which is a permitted use under the Bennington Zoning Bylaw, or as a A residential care facility,@ or a A school,@ each of which is a conditional use under the Zoning Bylaw in the Rural Residential zoning district. Appellant seeks rulings under two proposed scenarios: one in which the students reside at the house but receive educational instruction and therapeutic services on campus or elsewhere, but not at the house; and the other in which the students reside at the house, and receive educational instruction and therapeutic services at the house.

The following facts are undisputed unless otherwise noted. We must note specifically as it pertains to this case that, in a prior summary judgment ruling, the Court ruled that two essential facts regarding the operation of the residence were disputed, or at least were not established sufficiently for the purposes of summary judgment. These two facts were: whether the house is licensed or registered by the state as either a residential care home or a group home, and the second is whether all of the residents of the house are either developmentally disabled or physically handicapped. Although for the purposes of its October 2001 initial summary judgment motion the Town stated at footnote 1 that it A does not contest that the existing facilities are properly licensed by the State or that the residents are developmentally disabled,@ the materials submitted do not establish that BSI equates the developmental disabilities of its students[1] with the term as it is defined in state statute. To qualify as an exempt group home treated under state statute as a permitted single family residence, the residents must be either physically handicapped or must be subject to the following type of developmental disability: A a **severe, chronic disability** of a person that is manifested before the person reaches the age of 18 and results in: (A) mental retardation, autism or pervasive developmental disorder; **and** (B) deficits in adaptive behavior at least two standard deviations below the mean for a normative comparison group.@ 18 V.S.A. ' 8722(2) (Emphasis added). This appears to require more than a determination that the children have special educational needs; not only must the disability be severe and chronic, but both other prongs of the test must also be met. However, we cannot make that determination on summary judgment[2], and therefore for the purposes of the remainder of this analysis, we will assume that the house is licensed or registered by the state as either a residential care home or a group home and that all of the residents of the house are either developmentally disabled under that definition or are physically handicapped. That is, assuming that the house does meet the statutory exemption for consideration as a permitted single-family residence, we must determine whether anything else about the operation of the residence in

connection with the school requires it to be treated as a school use rather than a permitted single-family use.

In this context, it is helpful to examine circumstances in which uses conducted in a traditional single-family residence nevertheless fall into a different use category requiring a conditional use permit rather than being treated simply as a home occupation in a permitted single-family residence. For example, if a home occupation as described in ' 1.8 employs more than two persons who are not residents of the dwelling, or exceeds 30% of the dwelling, it cannot be treated as a permitted use home occupation. Similarly, certain listed uses such as group dance or musical instruction, auto repair shops, kennels, or machine shops, cannot be treated as home occupations but must receive conditional use approval even if they are carried on in a residence by the residents. The fact that a house is categorized as a permitted single family residence does not thereby exempt all uses that may be proposed for the house from having to apply for conditional use approval.

Appellant operates two campuses: a boys= campus in Bennington, including a school, dormitories and an administrative building, and a girls= campus in North Bennington, including a school and a dormitory. Appellant houses its students in the dormitories as well as in houses in residential neighborhoods near the schools. Appellant provides the residential houses as part of its program to meet the special needs of some of its students; that is, to provide the opportunity to live in a residential, family-like setting in a neighborhood, to learn day-to-day living skills, to develop a bond with a small group of staff and peers, and to experience a healthy, family-like living environment prior to returning to their homes and communities. In the residential houses, Appellant provides 24-hour adult supervision, with generally one staff member for every three students. Two or three staff members are present with the students in each residential house during waking hours, and at least one staff member is present and awake through the night to check periodically that all the students are on the premises. The adult staff members do not themselves live at the house, and although there is a kitchen in the house, meals are not prepared there but are brought in from the school kitchens.

In the first proposed scenario, the students are transported to the school campus by van for school instruction, to attend group counseling sessions, and to attend individual counseling sessions (which also occasionally but not regularly may take place at the house). The students have lunch at the school and attend recreational events on campus and in the community. They spend weekday evenings at the house doing homework, having their evening meal, having quiet social and recreational time, and preparing to go to sleep. Their weekend activities may include on-campus and off-campus recreation, all under supervision of school staff, but not including classroom instruction. A staff member who does not live at the house comes in as the A night awake@ staff to provide adult supervision through the nighttime hours.

In the second proposed scenario, the students do not attend school or receive clinical services on the school campus, although they do go to the campus and attend off-campus recreational activities under the supervision of school staff. Rather, a room is maintained at the house for classroom work and for group counseling sessions, and space is also made available in the house for individual counseling sessions. The teachers and clinicians come into the house to provide these services in the daytime and evening hours. During the educational instruction time when the teachers are in the house, the other adult staff members are not present.

Both proposed scenarios describe the use of the houses as uses connected with the school but located off-campus. The use of the house as described in the first scenario is essentially the same as that of a house used as a boarding school dormitory or a college dormitory for students not categorized as developmentally disabled. Such a use is functionally part of the boarding school or college use, and must receive conditional use approval as such, even if it is located across the street or down the road from the campus or in a building that was formerly a private residence. The use of the house as described in the second scenario is even more a school use

in a satellite building, as the instructional services and clinical services are provided in special purpose classroom and office space built into the building for that purpose.

The statutory protection for group homes for the developmentally or physically disabled entitles such homes to be treated the same as a single-family residence, not to receive more protection than a single-family residence would receive under the same circumstances. The buildings are being used as supervised dormitories for the school, with or without their own classrooms and clinical services. They are not simply being used as group homes run by the same organization as the school. Therefore they must receive conditional use approval as a satellite school use.

Accordingly, based on the foregoing, Appellant= s Motion for Summary Judgment is DENIED, and the Town= s Motion for Summary Judgment is GRANTED. Under both described scenarios, Appellant must obtain conditional use approval of the residential house as a school use.

It appears to the Court that this decision concludes this appeal, unless the parties wish to have a hearing to resolve whether the particular students proposed as residents for any specific house are subject to a developmental disability as defined by state statute. Accordingly, this matter will be entered as closed on the Court= s docket as of July 24, 2002, unless the parties submit by July 23, 2002, any contrary request, any requested additional judgment order, or any request for a telephone conference to discuss the status of this matter, in which case the conference can be held on July 29, 2002 or on August 5, 2002.

Done at Barre, Vermont, this 15th day of July, 2002.

_____
Merideth Wright
Environmental Judge

---

**Footnotes**

[1]. Appellant's "Program Summary" of its services describes its students as having "diagnosed special educational needs including learning disabilities, moderate intellectual handicaps, moderate physical handicaps, and emotional and/or social disorders."

[2]. We note that the consequence of a determination that a residence does not fall within the "group home" exemption under the state statute and the Bennington ordinance is simply that Appellant must apply for conditional use approval of each residence house for the school, whether within the "school" use category, the "residential care" use category, or the "group home" use category for persons not meeting the "developmentally disabled or physically handicapped" criterion.